# No. 14,188.

PEOPLE EX REL. ALBRIGHT ET AL. *v.* BOARD OF TRUSTEES OF
THE FIREMEN'S PENSION FUND OF AND FOR THE
CITY AND COUNTY OF DENVER ET AL.

(82 P. [2d] 765)

Decided June 20, 1938.   Rehearing denied September 19, 1938.

2

Mr. PHILIP HORNBEIN, for plaintiffs in error.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, for defendants in error.

Mr. HORACE N. HAWKINS, amicus curiae.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE relators, alleging that they were on April 15, 1935, and ever since have been, and now are, surviving widows of men who died while in the service or while on the retired list of the fire department of the City and County of Denver, in the state of Colorado, prosecuted an action in mandamus in the district court against the board of trustees of the Firemen's Pension Fund, and the members constituting said board, to compel payment to them of monthly pensions of forty dollars per month instead of pensions of thirty dollars per month which they had been receiving. An alternative writ issued directing the board to make such payments from and after April 15, 1935, the date the amendment hereinafter mentioned became effective, or to show cause for their failure so to do. Respondents demurred to the writ for want of sufficient facts. The demurrer was overruled, whereupon respondents answered. Demurrers to certain portions of the answer were overruled. Respondents again demurred ore tenus in open court to the alternative writ of mandamus for want of sufficient facts, which demurrer was sustained by the court. The writ was ordered dismissed and judgment entered in favor of the respondents for costs. To the sustaining of the demurrer and to the judgment dismissing the writ the relators assign error.

We are of the opinion that the assignment is good and that the judgment must be reversed.

The original act, passed in 1903 (S. L. '03, c. 172), was entitled: "An act to create and establish a pension fund for firemen, their widows and dependent children, in

cities containing a population of over one hundred thousand inhabitants and having paid fire departments, and for the maintenance, management and conduct of the same.

Sections 1 and 2 provide for the establishment of a fund and board of trustees to manage it.

Section 3 provides for the creation of a fund to be paid to the trustees to be created by a tax not exceeding one cent per hundred dollars valuation of the taxable property of such cities coming under the provisions of the act and by payment into the fund of fines and penalties imposed on members of the department for disciplinary purposes, together with all gifts or rewards that may be made or paid to members for extraordinary services, and section 4 provides for an addition to such fund by an assessment of one per cent on the salary of each member of the department to be deducted monthly.

Sections 6 and 7 provide for the investment of funds in the hands of the trustees and that both principal and interest shall be applicable to the payment of pensions under the act.

Section 10 provides for retirement on half pay based on the average of the last year's salary after twenty years service and after the member has attained the age of fifty years.

Section 8, so far as pertinent to this controversy is as follows: "If any member of said fire department shall, while in the performance of his duty, be killed, or die as a result of an injury received in the line of his duty, or of any disease contracted by reason of his occupation, or shall die from any cause whatever as the result of his services in said department, or shall die while in the service or on the retired list, from any cause, and shall leave a widow, or child or children under fourteen (14) years old surviving, said board of trustees shall direct the payment from said pension.fund monthly, to such widow, while.unmarried, of thirty ($30.00) dollars, and

for each child until it reaches the age of fourteen (14) years, six dollars ($6.00)."

Section 9 is as follows: "If at any time there shall not be sufficient money in such pension fund to pay each person entitled to the benefits thereof the amount per month as herein provided, then an equal per cent of such monthly payments shall be made to each beneficiary until the said fund shall be replenished to warrant the payment in full to each of said beneficiaries."

Section 12 reads: "No person shall be entitled to receive any pension from the said fund, except a regularly retired member, or a regular member in said fire department, his widow and children under the age of fourteen (14) years."

The act was amended in 1935. S. L. '35, c. 117, '35 C. S. A., c. 163. Section 3 as amended provided for a tax of two and one half cents per hundred dollars of assessed valuation of property in cities subject to the act and section 4, as amended provides for an assessment of two per cent, instead of one per cent, of the salary of each member of the department.

Section 8, as amended ('35, c. 163, §456), and in so far as pertinent to this controversy is as follows: "* * * if any permanently disabled officer, member or employee has served in said department for twenty years, the said board shall order that there be paid to him from said fund each month a sum equal to one-half of the monthly compensation allowed to him as salary at the date of his retirement, regardless of the cause or time of his disability * * * If any member, officer or employee of said fire department shall die from any cause while in the service, or while on the retired list, leaving a surviving widow, said board of trustees shall order the payment from said fund to such widow of $40.00 per month so long as she remains unmarried, and shall also order the payment to such widow or guardian of each child of such deceased member, officer or employee, of $8.00 per month until such child reaches the age of sixteen years.

If there is no surviving widow, but a surviving child or children under sixteen years of age, then the said board shall order the payment of $12.00 per month to the guardian of such child or children for each child until such child reaches the age of sixteen years.''

This amended section further provides that if there is no surviving wife or child that dependent parents shall receive a pension.

Section 12 was amended merely by adding dependent surviving parents to those mentioned in that section as entitled to benefits. '35 C. S. A., c. 163, §460.

The field of inquiry is narrowed by the manner in which all parties to the controversy have submitted the case. Nowhere is any question raised as to the matter of the pensions involved being a local or municipal matter. All parties assume that the law as amended must be considered to determine whether from and after its passage a compensable status—which we shall refer to herein as a pensionable status—exists. It is assumed also that the laws as amended in 1935 are applicable to the City and County of Denver, leaving for our consideration only the question of the proper construction of the law as amended with respect to those having a pensionable status when it was amended.

If, as respondents contend, there may be no increase in pension because those on whose service relators base their right to a pensionable status contributed only to the extent of one per cent of their salaries, and if, as they assert also, there may be no decrease because a right is vested when the pensionable status arises, then as a necessary corollary the original law remains unamended as to all who had a pensionable status when the amendments were passed. The words of the amendments themselves clearly indicate that it was not intended that payment of the assessment should be a prerequisite to the receiving of benefits. Section 8 as amended ('35 C. S. A., c. 163, §456), provides that ''If any member * * * shall die * * * *while on the retired list,* leaving a surviv-

ing widow," that such widow shall receive $40 per month. It further provides that if there is no surviving widow, but surviving children under 16, that the children shall receive $12 per month instead of $8 as by the original act provided. It then creates a new class of dependents of a retired member; namely, dependent parents, who in the event there is no surviving widow or children, shall receive $40 per month. The entire payment to parents of a retired member, and the increased payments to the widow and children of such retired member, all must be made from funds partially created by assessments on members subsequent to the amendment notwithstanding the retired member never contributed, or had an opportunity to contribute, anything under the two per cent assessment clause to the fund. Said amended section 8 also provides: "If any permanently disabled officer, member or employee has served in said department for twenty years, the said board shall order that there be paid to him from said fund each month a sum equal to one-half of the monthly compensation allowed to him as salary at the date of his retirement *regardless of the cause or time of his disability.*" This also creates a new class having a pensionable status brought into existence by twenty years service and the sustaining of a non-service caused permanent disability. Certainly the creation of a new class that may have credit for service rendered during the whole or any part of the twenty years while the old act was in force with its one per cent assessment throws as great a burden on the fund and is equally as disturbing to the equities—if such they have —of those in future to become beneficiaries who have contributed two per cent to the fund as it is to allow the increased pensions to those who, like relators, already had a pensionable status under the old act, unless the act be construed—and we think its wording does not permit such construction—to apply only to those who serve twenty years after the passage of the amendment and then sustain a non-service caused permanent disability,

or to dependent parents of those members retired after the amendments became effective. We are mindful that the rights of members of any class other than relators, to receive, and the amounts they are to receive, are not involved in the controversy before us and we do not determine or express an opinion as to what the legal rights of members of other classes are, or the extent thereof. We have mentioned the various situations arising under the amendment for such bearing as they may have on respondents' argument that the General Assembly did not intend that relators should receive, and that it would be inequitable that they should receive, the increased payment because those on whom their rights depend never contributed but one per cent of their salaries to the fund. We have not overlooked the fact that retired members who, under section 18 ('35 C. S. A., c. 163, §466), may be assigned to light duties in extraordinary emergencies are held by some courts still to be members of the department (*State ex rel. v. Tampa,* 119 Fla. 556, 159 So. 292, 98 A. L. R. 501), but this does not efface the obvious fact that they never have made the increased contribution if that is important, as respondents say it is. It is strange that with such situations before it the General Assembly, if it did not intend such classes should benefit from the increased assessment to which the service in the department on which their rights depend had never been subject, left the whole matter open to contention when language was available to put at rest any possible doubts concerning the matter. As to whether the General Assembly might lawfully extend the classes to receive, when in the nature of the situations covered by the amendment no antecedent two per cent assessment could have been paid, a reading of the act as amended clearly shows that such contention as to its intent is at least within the letter of the act as amended. If the General Assembly did so intend, it would seem reasonable and equitable that if a pensionable status and increased benefits to any class with correspondingly increased burdens on the fund and

its contributors are to be predicated in whole or in part on service rendered prior to the amendments raising the assessment, that an increased benefit to those now having a pensionable status should likewise be allowed if it may be done under reasonable and recognized rules of statutory construction.

The only question in the case at bar is whether relator widows, having a pensionable status under section 8, as amended, and who secured it under the same conditions as are required to give widows a pensionable status after the amendment, are entitled to a $10 monthly increase in their pensions. Respondents concede in their brief that ''amendments in different states in almost the same language are held by one court to be retroactive as well as prospective and by another to be prospective only.'' The case of *Board of Trustees v. Schupp*, 223 Ky. 269, 3 S. W. (2d) 606, is a case in which the question involved was the payment of an increased pension to policemen provided by amendment to a pre-existing law. The act and amendment in question there were couched in language very similar to the act and amendment before us. The court states the issue as follows: ''This * * * brings us to the final question in the case, and that is, Does this act apply only to those who are placed upon the pension rolls after it became effective, or does it apply to Schupp and others who were already upon the pension rolls at the time of its enactment?

''In Black on the Interpretation of Laws, section 131, we find this:

'' 'An amendment of a statute by a subsequent act operates precisely as if the subject-matter of the amendment had been incorporated in the prior act at the time of its adoption, so far as regards any action had after the amendment is made, for it must be remembered that an amendment becomes a part of the original act, whether it be to change a word, figure, line, or entire section, or a recasting of the whole language.'

''In Gatton v. Fiscal Court of Daviess County, 169 Ky.

425, 184 S. W. 1, we quoted with approval the following from Cyc:

" 'Amendments to Constitutions or statutes are not regarded as if they had been parts of the original instruments, but are considered rather in the nature of codicils or second instruments, altering or rescinding the originals to the extent to which they are in conflict, and of course are to be treated as having a force superior to the originals to the extent of such conflict. If a constitutional amendment does not in terms expressly repeal a constitutional provision, yet it covers the same subject provided for in such provision, the amendment will be regarded as a substitute for it and as suspending it; and the same rule applies to statutes.'

"Applying that to the question before us, it follows that Schupp and those similarly situated are entitled to receive or be paid their pensions from and after the time that this amendment became effective, to wit, June 16, 1926, at the rate provided in the amendment."

The court cited among other cases from Illinois that of *Miner v. Stafford et al.*, 239 Ill. App. 346, the decision in which was reversed by the Supreme Court of Illinois in *Miner v. Stafford*, 326 Ill. 204. We think, however, that the reasoning of the Kentucky case is sound and applicable to the character of act and amendment involved in the case here under consideration.

The Supreme Court of the United States in *Pennie v. Reis*, 132 U. S. 464, 10 Sup. Ct. 149, 33 L. Ed. 426, held that compulsory assessments, such as are here involved, are in effect but a reduction in salary; that the assessments never in fact became the property of the member, but remained the property of the city, and that the fund set up in part of such so-called assessments is, in so far as so constituted, made up of public funds. Of course, the tax revenues directly payable into the fund are public funds and subject to such disposition as the authority levying the tax may direct. The language of the court on this matter was as follows: "Notwithstand-

ing, therefore, in this case, the petitioner avers that the deceased police officer contributed out of his salary two dollars a month, pursuant to the law in question, and, in substance, that the fund which was to pay the one thousand dollars claimed was created out of like contributions of the members of the police, the court, looking to the statute, sees that, in point of fact, no money was contributed by the police officer out of his salary, but that the money which went into that fund under the act of April 1, 1878, was money from the state retained in its possession for the creation of this very fund, the balance —one hundred dollars—being the only compensation paid to the police officer. Though called part of the officer's compensation, he never received it or controlled it, nor could he prevent its appropriation to the fund in question. He had no such power of disposition over it as always accompanies ownership of property. The statute, in legal effect, says that the police officer shall receive as compensation, each month, not exceeding one hundred dollars, or such sum as may be fixed after June 1, 1879, by a board of commissioners created under the act, and that, in addition thereto, the State will create a fund by appropriating two dollars each month for that purpose, from which, upon his resignation for bad health or bodily infirmity, or dismissal for mere incompetency not coupled with any offence against the laws of the State a certain sum shall be paid to him, and, upon his death, a certain sum shall go to his legal representative.'' * * * Until the particular event should happen upon which the money or a part of it was to be paid, there was no vested right in the officer to such payment. His interest in the fund was, until then, a mere expectancy created by the law, and liable to be revoked or destroyed by the same authority. The law of April 1, 1878, having been repealed before the death of the intestate, his expectancy became impossible of realization; the money which was to pay the amount claimed had been previously transferred and mingled with another fund, and

was no longer subject to the provisions of that act. Such being the nature of the intestate's interest in the fund provided by the law of 1878, there was no right of property in him of which he or his representative had been deprived. * * * It is sufficient that the two dollars retained from the police officer each month, though called in the law a part of his compensation, were, in fact, an appropriation of that amount by the state each month to the creation of a fund for the benefit of the police officers named in that law, and, until used for the purposes designed, could be transferred to other parties and applied to different purposes by the legislature." To a similar effect see *Plunkett v. Board of Pension Com'rs,* 113 N. J. L. 230, 173 Atl. 923.

▮ Since those who have not already fulfilled conditions entitling them to benefits from the fund have mere expectancies that are not vested (*Pennie v. Reis, supra; Plunkett v. Board of Pension Com'rs, supra,* and *Dodge v. Board of Education,* 364 Ill. 547, 5 N. E. (2d) 84, affirmed by Supreme Court of United States, 58 Sup. Ct. 98); and since they may be cut off by the legislature prior to the fulfillment of conditions entitling them to benefits, it necessarily follows, assuming the power of the General Assembly to make the assessment, that it can provide for the disposition of the proceeds of the assessment, which are public funds, as it sees fit, provided it does not so deal with them as to impair the vested rights, if any, of others. Since respondents assert that the rights of those already receiving benefits are vested, we so assume for the purposes of this case, but, as stated above, without deciding that they are vested. If vested, the right to receive $30 a month from the fund is not impaired by payment of $40 a month.

▮ ▮ Respondents contend that the increase cannot be paid to relators because to do so gives a retroactive effect to the amendment. In considering a case where claim was made that a law was retroactive, this court has made the following comment: "A very compre-

hensive definition of a retrospective act is that it is one 'which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed.' *Denver, etc. Ry. Co. v. Woodward,* 4 Colo. 162, 167.'' *Moore v. Live Stock Co.,* 90 Colo. 548, 10 P. (2d) 950.

Neither the original act nor the act as amended was intended to be retroactive. The original act provided for the payment of pensions to firemen and their dependents who, after the adoption of the law, occupied a certain status. It did not require that the status entitling one to a pension should result entirely from occurrences subsequent to the passage of the law. In determining the status entitling one to a pension, what occurred in the way of service prior to the passage of the act is permitted to be taken into consideration in determining the pensionable status. Similarly, the act as amended provides that occurrences prior to its amendment may be considered in determining a status entitling one to a pension. We think that an act is not retroactive if it applies to persons who presently possess a continuing status even though a part or all of the requirements to constitute it were fulfilled prior to the passage of the act or amendments thereto. If any person not a member of the department when the amendment became effective, had no status upon which the original act was effective at the time of its amendment, as to such person no status upon which the act as amended should be effective might be brought into existence by the amendment; but if any person had a status upon which the original act was effective, that status would continue under the act as amended and the provisions of the amended act would be applicable to that status.

We are of the view, since the increased payments are to be made only from the date the amendment to the act became effective, that the law construed to entitle relators to such benefits does not thereby operate retro-

14

actively. Neither do we think such payments as to the increase are mere gratuities. The fund was created to be used for those having a pensionable status under the terms of the act. This, relators have. It came into existence by virtue of their fulfilling the conditions required to secure it. Fulfillment of the same conditions will give to widows of members of the department, becoming such in the future, a similar pensionable status. In the creation of such status there is no discrimination between widows who became such before the amendment and those becoming such thereafter.

The payment of the increased benefit from and after the amendment became effective, as we have heretofore pointed out, does not impair any vested rights of those having a pensionable status; it does not impair the vested rights of those who have not acquired a pensionable status, for they have none. *Pennie v. Reis, supra; Dodge v. Board of Education, supra; Plunkett v. Board of Pension Com'rs, supra.* It imposes no new duty or obligation, neither does it attach any disability to those having a pensionable status in respect to transactions or considerations already past. As to those not having a pensionable status when the law was amended their rights under any future pensionable status they may acquire must be determined by the law as amended and their obligations likewise must be so determined. We know of no principle of law that requires the legislature, in providing by amendment for increased benefits to those becoming entitled in the future, to fix the increase of benefits in the same ratio as the burden is increased over that already imposed. Had it seen fit we know of nothing that would have prevented the General Assembly fixing an increase of assessments with no increase of benefits to those now having or hereafter to acquire a pensionable status. With the policy of the law as to who shall receive benefits and the amount thereof the board is not concerned. Its duty is to administer the fund in accordance with the law and it has no vested

right in the manner of administering it such that when once fixed it cannot be changed by the authority that fixed it in the first instance.

The respondents contend that mandamus is not a proper remedy because section 5 of the act provides that in all applications for pensions the decision of the board shall be final. In the case of relators, the board already has determined that they have a pensionable status. Having fixed that status on application for a pension neither the law nor the amendment vests any discretion in the board as to the amount of payment that shall be made. We have too often held, to require citation of authorities, that mandamus lies to direct an administrative act where a clear legal duty to perform the act exists. We think in this case mandamus is proper because no question of pensionable status is involved. In determining a pensionable status the board is required to exercise judgment. When it has exercised its judgment and determined the right of an applicant to receive a pension the amount to be paid is not a matter of discretion but one of right and there is a clear legal duty to pay the sum fixed, the performance of which duty is enforceable by mandamus.

The judgment of the district court is reversed.

Mr. Justice Bouck dissents.