No. 14,670.

Bedford, State Auditor, *v.* White et al.
(106 P. [2d] 469)

Decided October 7, 1940.

440

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, deputy, for plaintiff in error.

Mr. Horace N. Hawkins, Mr. Kenneth W. Robinson, for defendants in error.

Mr. Erskine R. Myer, Mr. W. David McClain, Mr. Edwin A. Williams, Mr. Pierpont Fuller, amici curiae.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

Defendants in error, White and Adams, former members of this court, instituted an action under the provisions of article 10, chapter 93, '35 C.S.A., to obtain a declaratory judgment determining their right as retired justices to pensions allegedly payable to them. The action was against the state auditor who refused to issue vouchers for the pension. The auditor demurred to the complaint, which was overruled, and, after his election to stand thereon, judgment was entered in accordance with the prayer of the complaint.

Since the original Supreme Court pension act is indirectly involved, as well as the 1939 act which is directly challenged here as to White and Adams, it is well that we have them both before us, and we set them out respectively.

"An Act Relating To Pensioning Of Certain Classes Of Judges Of The Supreme Court After Retirement From Office.

"Section 1. When any person having heretofore served, is now serving, or shall hereafter serve as a judge of the Supreme Court of Colorado, has served not less than ten years in said court, and has attained the age of sixty-eight years before the end of such service, he shall from the time he ceased to hold said office by reason of expiration of his term or voluntary resignation during a term, be entitled to and receive an annual pension during the residue of his natural life. Such pension shall be in an amount of $3,000.00 annually and

payable monthly out of the general fund of the State of Colorado." '35 C.S.A., vol. 2, p. 886, c. 46, §33, S.L. 1925, c. 168, p. 504.

"An Act Relating To Pensioning Of Certain Classes Of Judges Of The Supreme Court After Retirement From Office, And To Amend Section 1 Of Chapter 168 Of The Session Laws Of Colorado Of 1925. Section 1. That section 1 of chapter 168 of the Session Laws of Colorado of 1925, be, and the same is hereby amended to read as follows: Section 1. When any person having heretofore served, is now serving, or shall hereafter serve as a judge of the Supreme Court of Colorado for not less than ten years, and has ceased to hold said office by reason of expiration of his term or voluntary resignation and has reached the age of sixty-five years, he shall be entitled to and receive an annual pension during the residue of his natural life. Such pension shall be in an amount of $3,000.00 annually and payable monthly out of the general fund of the state of Colorado." S.L. 1939, p. 317, c. 96.

While a number of constitutional objections were urged below, the attorney general confines his argument here to two provisions of our Constitution which he says are violated by the legislative acts here under consideration. These provisions are as follows: Article V, section 28. "No bill shall be passed giving any extra compensation to any public officer, servant or employee, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim made against the state without previous authority of law."

Article V, section 34. "No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, nor to any denominational or sectarian institution or association."

It is defendant's contention that under the foregoing sections 28 and 34 of article V the entire scheme of judi-

cial pensions set up in the acts of the General Assembly hereinbefore set out is unconstitutional and void. In his brief he cites the case of *In re Relief Bills,* 21 Colo. 62, 39 Pac. 1089, in which section 34, supra, was under consideration, and quotes therefrom the following paragraph:

"We think it is clear that the state cannot, in its sovereign capacity, extend aid for charitable, industrial, educational or benevolent purposes to any person, corporation or community, unless such person, corporation or community is under the absolute control of the state, and that the appropriation attempted to be authorized by the bill under consideration is forbidden by section 34 of article V of our state constitution."

With reference to this statement he says: "If the foregoing holding is still the law in Colorado, the whole pension scheme of allowances to former judges of this Court is unconstitutional and void." If the whole judicial pension scheme is unconstitutional and void it is of course void as to plaintiffs Adams and White. With this question, as to the constitutionality of the entire scheme as embodied in the 1925 act and the 1939 amendment raised and before us for consideration, any distinctions that may exist between the situations of plaintiffs White and Adams and any other persons who have served, are now serving, or may hereafter serve as judges of the Supreme Court are irrelevant and immaterial, unless it first be either assumed or determined that there is power in the General Assembly, under some conditions, to provide for pensions for judicial officers. We may not make the assumption, for the question of the existence of the power is now before us. We must therefore determine as matter of law whether under sections 28 and 34, supra, such power exists. After making this determination, then only, if it be held that it does exist as to any judges, do the alleged distinctions in the situations of plaintiffs and those of other judges who may receive pensions become relevant or material.

Before considering the specific questions raised by the attorney general, who appears for the auditor, it may be well to make a few observations on the subject of pensions generally.

"A pension is not a matter of contract, and is not founded upon any legal liability. No man has a legal vested right to a pension; it is a mere bounty or gratuity given by the government in consideration or recognition of meritorious past services, or of loss or damage sustained in the public service and 'springing from the appreciation and graciousness of the sovereign.' It may be bestowed upon such persons and upon such terms as the law making body of the government prescribes. And 'its payment must be made and accepted in exact conformity with the terms of the grant, and must be subject to all the limitations, conditions and exceptions therein contained.' It is, at most, an expectancy granted by the law. And although existing pension laws may entitle one to a pension, the government may, at its pleasure, at any time, change the amount thereof or revoke or destroy it altogether." 48 C.J. 786, §2.

Again it is to be observed that members of the judiciary have been pensioned under Anglo Saxon jurisprudence since the close of the eighteenth century. Pensions have been paid to our federal judges since 1869, and legislation authorizing pensions to state judges has been passed in nearly half of the states of the Union.

Judge Cooley says that liberal provisions may be made for men "who have performed" meritorious public services in the army and navy and that "The same may be said of a like recognition of valuable public services rendered by other persons: The question in every case is not one of power, but of prudence and public policy." 1 Cooley on Taxation (3 ed.) pp. 189-190.

"The power to give rewards after the event for conspicuous public service, if it exists at all, cannot be limited to military service. If a man has deserved greatly of the Commonwealth by civil services, the pub-

lic advantage of recognizing his merit may stand on ground as strong as that for rewarding a general. We cannot foresee the possibilities of genius or distinguished worth and settle in advance the tariff at which its action shall be paid. * * * To a great extent the distinction must be left to the conscience of the Legislature." *Opinion of the Justices,* 175 Mass. 599, 57 N.E. 675, 49 L.R.A. 564. The opinion of which this statement is a part bears the signature, among others, of Oliver Wendell Holmes. It is true that the Constitution of the state of Massachusetts contains no provisions similar to sections 28 and 34, article V, supra, but the Supreme Court of Illinois, which does have constitutional provisions similar to ours, held it was, nevertheless, applicable. *Hagler v. Small,* 307 Ill. 460, 138 N.E. 849.

■ By the act of 1925, which is general, the legislature prescribed the conditions to be fulfilled in order that a judge might have a right to a pension. These conditions were two fold: (a) Not less than ten years as judge of the Supreme Court must have been served. (b) The age of sixty-eight must have been attained before the expiration of such service. The conditions to be fulfilled in order to acquire a pensionable status under the 1939 act also were two fold: (a) Not less than ten years as judge of the Supreme Court must have been served. (b) The age of sixty-five must have been attained before the expiration of such service, or (c) If the judge had not attained the age of sixty-five upon the expiration of ten years of service he must live thereafter until he attained the age of sixty-five. From an examination of the two acts it is obvious that one who is eligible under the 1925 act, also is eligible under the 1939 act. Since the new act covers every possible case covered by the original, it unquestionably was the intention of the General Assembly that it should supplant the old act as a new coverage of its entire subject matter.

That White and Adams, in their ten years of service

on this court, have rendered meritorious public service as members of this court is nowhere denied.

Under the 1939 act they, at the time of their retirement, had served the required number of years and each has now attained the required age. Under said act they had only to wait until the expiration of the period intervening between their retirement and the time they reached the age of sixty-five years to become entitled to pensions. Save that they were not in office when the 1939 act was passed, their status differs in no respect from that of any judge now serving or who may hereafter serve and retire from office before he reaches the age of sixty-five; nor does it differ in any respect from that of judges who retired from office before the 1925 act was passed, and who, upon retiring had no pensionable status. Such status has no independent existence in and of itself, but is created by the act providing for pensions. Other former judges were within the terms of the 1925 act and have received pensions.

Until this case arose, the executive officers charged with making pension payments—here, defendant auditor and his predecessors in office—had recognized such former judges as possessing a pensionable status; had raised no constitutional objection to their right to pensions and have paid them in due course. If the General Assembly by the act of 1925 could fix conditions that had been fulfilled in the past, namely, ten years judicial service and attainment of the age of sixty-eight, under which such former judges would be entitled to pensions after the passage of that act, then by the 1939 act, it with equal reason might fix conditions under which Adams and White would be eligible; namely, ten years judicial service and attainment of the age of sixty-five, after which they would be entitled to pensions pursuant to the act, to be paid to them when they arrived at the established age. Construction of the act by legislative and executive officials over a long period of years was to the effect that this might be done.

We consider the foregoing observations in making our approach to the solution of the problem at hand.

It will be noted that the 1939 Act reduced the age limit from sixty-eight years, required by the 1925 Act, to sixty-five years, and made it unnecessary for a judge otherwise qualifying for the pension to be an incumbent in office at the time he attained the age necessary to establish his pensionable status. White served the full ten-year term, from 1909 to 1919, and became sixty-five years of age December 24, 1929. Adams, likewise, served the term of ten years, from 1925 to 1935, reaching the age of sixty-five December 25, 1938.

In recent years legislation providing for pensions and retirement compensation to large numbers of persons after their retirement from service as *public officers, servants, employees,* and *agents* of the state has been enacted by the General Assembly. Instances of this are the laws providing pensions for policemen and firemen and their dependents, and retirement compensation for teachers and for those state employees within the terms of the state employees retirement act. '35 C.S.A., chapter 163, sections 497 to 535, and Article 24, chapter 163, 1939 Cumulative Supplement to '35 C.S.A. (The last cited article provides inter alia for a state levy of two tenths of a mill for the payment of policemen's pensions and the act was upheld in *Police Protective Ass'n v. Warren,* 101 Colo. 586, 76 P. [2d] 94).

All of the beneficiaries of these laws are paid benefits from revenues arising in whole or in part from the exercise of the state's power to tax. Even in those cases where partial payment is made by withholding a part of the salary derived from tax produced revenue it has been held that such amounts merely to a reduction in salary and that the funds so withheld to be applied to pensions are public funds. *Pennie v. Reis,* 132 U.S. 464, 10 Sup. Ct. 149, 33 L. Ed. 426. This case was cited with approval in *People ex rel. v. Trustees,* 103 Colo. 1, 82 P. (2d) 765. It may be noted also that the

recipients of compensation under these various enactments, largely if not wholly, fall within the classes mentioned in section 28 of article V, supra, of *public officers, servants, employees, agents,* or *contractors,* and in section 34 of article V, supra, as *persons not under the absolute control of the state.* We are aware of the fact that the rights of none of these classes are directly involved or may be determined in this suit. We mention them merely as instances of the possible far reaching effect of the construction of these two sections of the Constitution contended for by defendant in this case. Also they are examples of a general and long continued legislative and executive construction of the Constitution as not inhibiting wholly the power to grant pensions or retirement compensation after public services have ceased. We are mindful of the fact that we have held that "a power may be long exercised in violation of the Constitution, but this does not authorize its infraction." *Leckenby v. Post Co.,* 65 Colo. 443, 176 Pac. 490. In determining whether the exercised power is an infraction of the Constitution we have said also that "To determine what is constitutional is not committed exclusively to the judicial department. The views of officials of coordinate branches of the Government are entitled to consideration." *Hudson v. Annear,* 101 Colo. 551, 75 P. (2d) 587.

Therefore, the questions become: 1. Under sections 28 and 34 of article V of the Colorado Constitution is the General Assembly in all cases barred from exercising the power to grant a pension to a judge who has served on the Supreme Court? 2. If there is resident within the General Assembly such a power, do these two sections of the Constitution, for some reason or reasons peculiar to plaintiffs appearing from the facts alleged in their complaint and admitted for the purposes of the demurrer, bar its exercise to grant to them a pensionable status as was attempted to be done by the **1939 act?**

We are of the opinion, and so hold, that said sections 28 and 34 of article V do not operate in all cases as a bar to the exercise of such power. We are further of the opinion, and so hold, that the facts alleged in plaintiffs' complaint do not disclose any reason or reasons peculiar to plaintiffs that prohibit the General Assembly under said sections 28 and 34 from granting a pensionable status to plaintiffs as was done by the 1939 act. The considerations other than those heretofore mentioned that impel us so to hold are hereinafter set forth.

It is pertinent to consider the nature of pensions and the basis on which they rest. In *United States v. Hall*, 98 U. S. 343, 25 L. Ed. 180, it is said: "Regular allowances paid to an individual by government in consideration of service rendered, or in recognition of merit, civil or military, are called pensions." In *Eddy v. Morgan*, 216 Ill. 437, 75 N.E. 174, the Supreme Court of Illinois used these words: "A pension is a bounty springing from the graciousness and appreciation of sovereignty. It may be given or withheld at the pleasure of a sovereign power."

Pensions for military service have been granted almost from the very inception of our government. In *United States v. Hall, supra,* the Court said: "Power to grant pensions is not controverted, nor can it well be, as it was exercised by the States and by the Continental Congress during the war of the Revolution; and the exercise of the power is coeval with the organization of the government under the present Constitution, and has been continued without interruption or question to the present time." The court speaking further said: "Power existed in the States before the Constitution was adopted, and it would serve to undermine the public regard for our great charter if it could be held that it did not continue the same power in the Congress." Powers that the states might and did grant to the federal government they may exercise unless prohibited by the federal Constitution or Constitutions of the respec-

tive states. Nowhere are pensions mentioned in the Constitution of Colorado. Unless the granting of them is expressly prohibited, or language is used that by necessary implication must be construed as a prohibition, the power to grant them exists as a residual power of the state.

■ The definitions of pensions above quoted recognize no distinction between the merit that may attach to military service and that which attaches to civil service. If there is a difference it is not in kind but in degree or extent only. The right of government to recognize and reward merit in public service is the basis on which all pensions must rest if they are to be upheld at all. If valuable public service has been rendered to the government or state by a soldier, a sailor, a judge, a teacher, a fireman, a policeman, or a civil service employee and the General Assembly determines and prescribes what shall constitute service of sufficient merit to raise a moral obligation on the part of the state to recognize it by the grant of a pension to the one who has rendered it, unless such grant shall clearly contravene some constitutional provision or be so palpably contrary to what honest and reasonable men of ordinary intelligence would deem a fitting and proper recognition of such merit as to amount to a mere arbitrary and fraudulent expenditure of public revenues, the matter rests in the sound discretion of the legislative branch of the government and with its exercise it is not the province of the courts to interfere.

■ The state is not bound in any case to provide for recognition of the meritorious service of judges or of any other kind of meritorious service even though it may clearly exist. It may within constitutional limits do so or may not do so at its election. A pension, therefore, is not a matter of right but, as has been said, a bounty "springing from the graciousness of the sovereign." It is a reward of merit that the General Assembly determines presently to exist and if it may reasonably be

held that the recognition of such merit by the grant of a pension will serve a public purpose it is within the power of the General Assembly so to recognize it.

The attorney general relies strongly on the case of *Mahon v. Board of Education,* 171 N.Y. 263, 63 N.E. 1107, as supporting his position, which case also is the basis for the statement by Judge Dillon to the effect that "To be valid under constitutional requirements, the pensions must be conferred upon persons who at the time of receiving the right to them are officers or employees * * *. They cannot be conferred upon persons who had previously to the grant, retired from the service." 1 Dillon Mun. Corp. (5th ed.) §430.

The Mahon case is grounded directly upon the proposition that "There was no moral obligation on the City of New York to establish a pension system in favor of teachers," and that the attempted benefits were "extra compensation," which is forbidden by our Constitutional section 28, supra. There are at least two matters worthy of consideration. 1. To so hold would jeopardize, if not invalidate, major pension plans long established in this state, e.g., policemen and firemen, state employees, and teachers. In a recent case Judge German, quoting from *Dodge v. Board of Education,* 364 Ill. 547, said: "Moreover, it may be observed that counsel's contention that these payments are annuities of compensation withheld for services rendered, if of force, would endanger the entire act (policemen's and firemen's pension) since section 19 [our section 28] of article 4 of the Constitution prohibits the granting or authorizing of extra compensation, fee or allowance to any public officer or contractor after service has been rendered or contract made." *City of Dallas v. Trammell,* 129 Tex. 150, 101 S.W. (2d) 1009, 1015. 2. No one is here contending that White and Adams are now public officers. Their terms of office have ended, hence section 28, supra, does not apply to them. The record of our constitutional convention indicates that it never was intended to apply

to anyone who had ceased to be a public official. We quote from Proceedings, page 725: "Witness: Attention is also directed to sections 27 and 28 providing against the corruptions heretofore complained of in legislative bodies and prescribing punishments therefor." See, also, *Hogan v. Stophlet*, 179 Ill. 150, 53 N.E. 604, 44 L.R.A. 809. We think this is shown by an examination of all of our cases wherein we have construed said section 28. In *People ex rel. v. Spruance*, 8 Colo. 307, 6 Pac. 831, referring to section 28, supra, we said: "The section quoted is comprehensive. It includes all claims against the state, whether the rate of compensation has been prescribed by law, as in the present instance, or whether in obedience to law it has been fixed by contract. In either case a subsequent promise or agreement to pay a higher rate is void."

Another point which reinforces the logic of the foregoing is that section 18 of article VI is a specific provision for the compensation of Supreme Court judges, which indicates that the constitutional inhibitions invoked apply only when the judge is in office. This section reads: "The judges of the Supreme and district courts shall each receive such salary as may be provided by law; and no such judge shall receive any other compensation, prerequisite or emolument, for, or on account of, his office, in any form whatever, nor act as attorney or counsellor at law." Certainly no one would contend that the inhibition against practicing law would apply to a lawyer who was formerly a member of this court, and the inhibition against extra compensation should and must be construed as being in para materia and as applicable to the same period of time. The section is silent as to any prohibition beyond their term of office.

The foregoing, we believe, sufficiently show that the 1939 Act as it affects White and Adams is not in contravention of section 28, supra.

In the case of *DeWolf v. Bowley*, 355 Ill. 530, 189 N.E. 893, an act granting pensions to judges at age sixty-five,

differing in no essential respect from our 1939 act, was upheld as to a judge who was in office when the act was passed but retired after serving the required number of years but before attaining the stipulated age. The contention was made that the act was unconstitutional because it violated section 19 of article 4 of the Constitution of Illinois, which is in effect the same as section 28, article V, of the Constitution of Colorado, in that it granted extra compensation after services were rendered. The court held against this contention. It called attention to the fact that judicial pensions are in force in England, in Canada, in the United States for federal judges, and for state judges in 18 of the 48 states. The court observed further that "Pension statutes have frequently been before this and other courts. It has been held that such acts are not invalid on the ground that the effect thereof is to appropriate public money to private use or to allow extra compensation to public officers for services already performed. [Citing a large number of cases] * * * This act does not violate the sections of the State Constitution referred to."

If within the meaning of constitutional provisions, such as section 28 of article V, supra, a pension is not extra compensation for services in office where, as in *DeWolf v. Bowley, supra,* the judge is in office when the act is passed, we are unable to see wherein the mere fact that all, instead of a part, of the service required is performed before the act is passed would change the situation. Surely no more merit arises deserving of the gratitude of the sovereign for faithful public services rendered in whole or in part after a pension law is enacted than attaches to ˜exactly similar˙ services rendered before the date of its passage. Even though a law creates a pensionable status based on services wholly rendered prior to its enactment and in such sense might be considered retrospective in operation it would not offend against section 11 of article II of the Constitution, for this section, a part of the Bill of Rights, is for

454

the protection of the rights of the citizen and is not applicable to the state. *Graham Paper Co. v. Gehner,* 332 Mo. 155, 59 S.W. (2d) 49.

 It is contended that the 1939 act, as it affects White and Adams, is in effect an appropriation for a charitable or benevolent purpose to persons not under the absolute control of the state, and is, therefore, in specific violation of said section 34. However, it is universally held that if such payments are for a public purpose, the incidental fact that the recipients are private persons does not violate this constitutional provision. One applicable statement on this subject, we think, is sufficient: "In deciding whether such purpose is public or private, courts must be largely influenced by the course and usage of the government, the object for which taxes and appropriations have been customarily and by long course of legislation levied and made and what objects have been considered necessary to the support and for the proper use of the government. Whatever lawfully pertains to this purpose and is sanctioned by time and the acquiescence of the people may well be said to be a public purpose and proper for the maintenance of good government. * * * If it can be seen that the purpose sought to be obtained is a public one and contains the elements of public benefit, the question how much benefit is thereby derived by the public is one for the legislature and not for the courts." *People ex rel. v. Barrett,* 370 Ill. 478, 481, 19 N.E. (2d) 356, quoting from *Hagler v. Small, supra,* and citing many authorities.

That pensions are not granted primarily for the benefit of the recipients thereof, but for the benefit of the state, in other words for the public good, may be admitted. If a pension has no reasonable relation to the public good it is of course a mere private grant and void. But if it serves a present public purpose it is not a mere private grant even though as an incident to the

accomplishment of the public purpose the recipients thereof may be personally benefitted.

It is argued that, even if the General Assembly has power to provide that pensions be paid to men serving when the 1939 law was passed, and to men who had theretofore acquired a pensionable status under the 1925 act on the ground that such pensions will serve a public purpose, that in no event may they be said to serve any public purpose, and hence cannot be upheld as to White and Adams. Neither of them had a pensionable status when their terms · expired, for such a status cannot exist without a law to create it and there was no law in effect that created such a status for either of them when they retired from office. It is argued in support of the validity of the act, on the ground that it serves a public purpose as to those judges in office when the acts were passed, that it will operate subjectively upon them to induce them to retire from office before the infirmities of age deprive them of the ability to render further efficient service when otherwise, confronted with economic insecurity and with the uncertainty of regaining late in life a law practice surrendered upon entry into office might cause such men though conscious of their infirmities to continue in office to the detriment of the state, when otherwise they would retire and permit others able to render efficient service to fill their places. It is argued further that able men, who because of present economic loss and prospective economic insecurity late in life or of the difficulty and hazard of reestablishing themselves after being withdrawn for a long period of years from private business might hesitate to accept a judicial office, will be free, with a pension in prospect, to enter upon such service and the state may be benefitted thereby. Such matters have been noted by courts as proper for consideration in determining whether a public purpose is served.

In *DeWolf v. Bowley, supra,* the court said: "Pen-

sions have generally been sustained on the ground that public benefit accrues in two ways: by encouraging such officers to remain in the service, and by retiring from public service those who have become incapacitated from performing the duties as well as they might be performed by younger or more vigorous persons. (1 Dillon on Mun. Corp. [5th ed.] sec. 430). Cooley, in his treatise on taxation (1 Cooley on Taxation (3rd ed.) 189), presents the view of courts generally in this country concerning pensions, that their primary object is not a private but a public interest, to show appreciation for meritorious public service, which may reasonably be expected to have a powerful influence in inducing long and continued service. He expresses the opinion that the power of the legislature to pass such acts is undoubted. Such pensions, generally, are not considered donations or gratuities but inducements to continued service." In *State ex rel. v. Hauge*, 37 N.D. 583, 164 N.W. 289, the Supreme Court of North Dakota, having under consideration a teachers retirement act challenged under a constitutional provision prohibiting the state from making donations to or in aid of any individual, upheld the law. In the opinion it used these words: "Surely, the providing of a permanent teachers' insurance fund, which shall give dignity to the profession, encourage persons to enter into it, and provide for old age, is a 'provision for the establishment and maintenance of a system of public schools'."

We are unable to perceive wherein the objective effect upon an able man with economic doubts as to the advisibility of his entering the judicial service would be less upon his observing that the state had recognized as it did the merit incident to the service of ex-judges after their retirement from office under the 1925 act, and of White and Adams as it now seeks to do after their retirement from office, than to observe that it had excluded them and limited its recognition by pensions to others of perhaps no greater merit who happened not to

have completed their service when the pension law or the amendment thereof was enacted.

Defendant argues that the firemen's pension case, *People ex rel. v. Trustees,* 103 Colo. 1, 82 P. (2d) 765, determines that a pensionable status at the time of the amendment increasing the compensation to firemen's widows was passed, is an indispensable prerequisite to the receiving of the increase. Ordinary care in reading the case will disclose that there was no such issue involved. That they possessed a pensionable status under the original act when the amendment was passed was not questioned by either party. Furthermore, the controversy there differed from the present one in that it was between contending claimants to a fund. The right of the state to create the fund to pay pensions was not controverted. In the instant case the right of the state to pay at all is made an issue. The firemen's case was a mandamus action to compel payment of increased pensions granted to widows of firemen deceased at the time of the amendment providing for the increase, whose widows had a status entitling them to a pension under the act in force at the time of the death of their husbands. It was determined in favor of the relators against the principal objection that the increased payments would violate section 11, article II, of the Colorado Constitution. This section is a part of the Bill of Rights. The case involved conflicting claims of persons to interests in the same fund, which in the event of insufficiency to make the full payments provided by the amendment was to be prorated. We held that under the definition we had theretofore given of retrospective legislation that is inhibited by said section 11 of article II no vested rights of relators were impaired by increasing the payments to them and that those who did not have a pensionable status under the act had no vested interest in, but a mere expectancy to be paid from, the funds in the hands of the trustees if and when they might acquire a pensionable status. Such an expectancy

we held was not a vested interest and therefore, there being no vested interest, none was impaired by payment of the increase to widows of firemen who died before the amendment was passed. The controversy was as to whether the payment sought to be enforced would cause the act to operate retrospectively so as to violate the foregoing provision of the Bill of Rights by impairing vested rights of those presently and prospectively entitled to payment from the fund. Whether impairment of the rights of persons possessing a pensionable status would result from an amendment creating a new class of pensioners, payment to whom would deplete the limited fund provided and thus require proration, is a matter which we did not determine. Neither did we determine whether those presently possessing a pensionable status had a vested interest in the fund. We held merely that if they did, increased payments to them did not impair it. The further argument was made in that case, as here, that the increase was a pure gratuity. We held that it was not. If the original pension served a public purpose and was not a mere gratuity to private persons the increase likewise was not a private gratuity. The General Assembly prescribed the conditions to be fulfilled in order that relators be entitled to a pension, and the conditions had been fulfilled. If the General Assembly had power to grant a pension to firemen at all it had the continuing power to determine what was a reasonable pension to accomplish the public purpose for which the grant was originally made.

If and in so far as the firemen's case may be considered as having a bearing on the instant case at all it is against the defendant's contentions. As pointed out we held that though the increase was granted when the conditions that created the pensionable status for relators all were fulfilled before the amendment, nevertheless the increase was not a gratuity. We cited what we then considered, and now consider, well reasoned authority approving the granting of increased pensions to

policemen after their retirement from service on a lesser pension. We held, as we did in the firemen's case, notwithstanding the holding in *Mahon v. Board,* 171 N.Y. 263, 63 N.E. 1107; in *People ex rel. v. Partridge,* 172 N.Y. 305, 65 N.E. 164; and in Dillon on Municipal Corp. (5th ed.), §430, all of which were cited and urged upon us in argument. We see no distinction between the situations of pensioners whose pensions based on past services are increased by an amendment, and the situations of those who by virtue of an amendment became eligible to a pension by virtue of past services, except that in the one case a pensionable status is acquired to the amount of the increase and in the other a pensionable status is acquired as to the amount of the pension.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE BOCK and MR. JUSTICE BURKE, dissent.

MR. JUSTICE BURKE dissenting.

I am unable to concur in the conclusion of the court. I think the issue has been lost in a wilderness of words. For example, I agree a man must be alive to get a pension, but doubt if that necessity is dependent upon adjudication. I agree that if no one can be pensioned defendants in error cannot be; at least no adequate answer to that assertion occurs to me. That question, however, is not here. We might with equal propriety declare that unless the constitutional sections involved were regularly adopted the act of 1939 did not violate them, and then address ourselves to the validity of their passage. The constitutionality of the act of 1925 is not before us. It is, as appears from the opinion, and more clearly from the record, simply dragged in by a casual comment of counsel. That this is an appellate tribunal seems to have been overlooked. An issue can only get before us by plea and adjudication in the trial court, inclusion in the writ, presentation by assignment and final

submission here. As to the act of 1925 this record meets no one of these requirements.

Decisions of the federal courts, and others not controlled by constitutional prohibition similar to ours, are wholly inapplicable. Neither are we concerned with the numerous attempts to define pensions. Most of these are applicable only to the particular facts of the particular case. Since such grants are of many kinds, each based upon its own peculiar considerations, such as to schoolteachers, firemen, soldiers, policemen, and persons disabled in the performance of a public, but not mandatory, service, the particular cases have small value save to the authors of text books. Converting an opinion into a treatise is a task for a Marshall.

The sole issue here is, Does the act of 1939 violate sections 28 or 34 of our Constitution, in so far as it authorizes payment of pensions to former judges of this court who were not on the bench when it, or any similar act then applicable to them, was in force? It is conceded in the court's opinion that said sections forbid all purely private grants and that those here in question can only be upheld on the theory of public benefit. The conclusion is that the legislature must have considered the benefit public or it would not have passed the statue. If that theory be good all constitutional restraints on legislation are abolished. If these pensions are forbidden by the Constitution they are void. If not so forbidden they are clearly within the discretion of the legislature.

My position is that there must be some reasonable theory of public benefits. If there be such the soundness of it rests with the legislature. If, as here, there is no such theory, the grant is purely private and the constitutional inhibition stands. The only logical suggestions of public benefits are those mentioned and repudiated in the court's opinion. Upon them Judge Dillon's conclusion rests but they have no application to defendants in error. They could neither have come into the service,

stayed in it, nor left it, because of the act of 1939. Hence I think they are not permitted by the Constitution to take under that act and the judgment of the court should be reversed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE OTTO BOCK concur in the foregoing.