No. 17,545.

WILLIAM H. McNICHOLS, AS AUDITOR OF THE CITY AND COUNTY OF DENVER, ET AL. *v.* CITY AND COUNTY OF DENVER, A MUNICIPAL CORPORATION, R. H. McWILLIAMS, ET AL.
(280 P. [2d] 1096)

Decided March 7, 1955.

Mr. FRED M. WINNER, for plaintiffs in error McNichols and Berge.

Mr. HARRY A. KING, for plaintiff in error Carl H. Helman.

Mr. BEN KLEIN, for plaintiff in error Municipal Employees Credit Union of Denver.

Mr. JOHN C. BANKS, for defendant in error City and County of Denver.

Mr. LEONARD M. CAMPBELL, for defendants in error R. H. McWilliams, Bert Keating, Emerson Carey, Jr., Blanche Bonner, Melvin Roberts, and Ralph Blossom, as Members of the Board of Trustees of the Retirement and Disability Plan of the City and County of Denver.

Mr. WILLIAM E. DOYLE for defendants in error Joseph L. Benedick, A. W. Heinemann, Glenn Dumford, William

B. Miller, Gordon Hampton, and all persons similarly situated.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THE controversy involved in this case has been before us by writ of error on a former occasion. Our opinion in those proceedings, *City and County of Denver v. Mc-Nichols,* 129 Colo. 251, 268 P. (2d) 1026, contained sufficient of the pertinent facts to justify a statement of the issues as set forth therein. Accordingly we quote from that opinion as follows:

"The City and County of Denver filed its complaint in the district court, in which numerous defendants were named as representatives of several classes of persons whose interests, duties and obligations were involved with relation to a series of ordinances adopted by the Denver city council. As hereinafter more particularly detailed, the ordinances giving rise to the action involve the creation, enlargement and dissolution or termination of a plan for retirement and disability benefits for employees of the City and County of Denver.

"In the complaint it was alleged, inter alia:

" 'That, in order to eliminate the uncertainty and insecurity with respect to rights, status, and other legal relations of the respective parties to this action, it is necessary that the following questions be judicially determined:'

"Seven lengthy, but nevertheless specific, questions were then set forth and the prayer of plaintiff was that a declaratory judgment be entered, 'answering the questions heretofore raised in this complaint and declaring the rights, status and other legal relations of all of the parties hereto.' " The record is lengthy, and much of it is immaterial to questions we are called upon to determine. In this opinion we refer only to so much of

it as we consider material to the conclusion we reach concerning the law applicable to the case.

In 1946 the city council of the City and County of Denver adopted an ordinance, No. 84, under which an elaborate system of retirement and disability benefits was provided for employees of the City. In anticipation of the possible future expansion of national social security benefits to include employees of municipal corporations the said ordinance included the following provision:

"Section 15. Nothing in the system is intended to nor shall it be construed to create a debt for any year which is a charge against the City's revenues for any future year. The system is a determination of policy by the City and will remain the policy until changed by ordinance or Charter amendment. The City reserves the right to discontinue further operation of the system at any time, in which event the trust shall terminate. In case of such termination of the trust any money in the trust fund shall be distributed and paid over within thirty days of such termination and in the following order of preference: First, an amount equal to the total contributions of each member, diminished, however, as to members who have theretofore become beneficiaries, by the amount of five dollars for each month the member shall have been a beneficiary; second, the remainder in the trust fund, if any, to all members and beneficiaries in direct proportion to the respective total service record of each, provided that for the purposes of determining such proportion no member's service record in excess of thirty-three years shall be considered; and with respect to beneficiaries of the system, the service record shall be diminished as to each member by the period of time each member shall have been a beneficiary."

In August, 1953, the city council adopted another ordinance, known as Ordinance No. 170, the object of which was to abandon the plan created in 1946 in favor of coverage under the Social Security Act of the United

States, 42 U.S.C.A. § 301 et seq., which system had been enlarged to permit coverage of municipal employees. Pursuant to the terms of the ordinance, distribution of the trust funds was directed as provided by the 1946 ordinance.

Under the ordinance establishing the plan (No. 84), the monthly payment required of employees was $5.00 and for each month for which a member paid that amount, the City paid into the fund to the credit of such employee the sum of $12.00.

Plaintiff in error, William H. McNichols, as auditor of the City and County of Denver, questioned the validity of the ordinance, which terminated the retirement plan, in so far as it purports to direct distribution to the employees of the unexpended contributions of the city. Plaintiff in error William G. Berge, a taxpayer, alleged in his answer that:

"All contributions made by the City and County of Denver to the retirement and disability plan of the City and County of Denver were at all times, since have been and now are public money. The distribution of said city contributions to the employees of the City and County of Denver is prohibited by Article XI, Sec. 1, 2 of the Constitution of the State of Colorado."

While other issues of minor importance are involved and are hereinafter considered, the main question for determination is rooted in the objections to the termination ordinance which were raised by Mr. McNichols and Mr. Berge. The trial court sustained the ordinance and directed distribution of the entire fund to the employees in compliance therewith.

Questions to be Determined.

First: *Should that portion of the trust fund which is composed of payments made by the City and County of Denver be distributed to the members as provided in Ordinance No. 84, series of 1946, and as provided in the written agreements with some members of the plan, or*

*are such funds money which should be paid to the City and County of Denver?*

█ For the reasons hereinafter briefly stated, we hold that the ordinance which provides for distribution of all the unexpended funds of the association to members thereof, is valid, and the trial court did not err in directing such distribution.

The pertinent provisions of the Colorado Constitution upon which reliance is placed to nullify the distribution of the contributions made by the city to the fund, are as follows: (Article XI, §§ 1 and 2)

"Section 1. Neither the state, nor any county, city, town, township or school district shall lend or pledge the credit or faith thereof, directly or indirectly, in any manner to, or in aid of, any person, company or corporation, public or private, for any amount, or for any purpose whatever; * * *.

"Section 2. Neither the state, nor any county, city, town, * * * shall make any donation or grant to, or in aid of, * * * any corporation or company * * *."

The arguments of counsel for plaintiffs in error, Mc-Nichols and Berge, is that the proposed distribution of the contributions made by the city offends the foregoing constitutional provisions in that it would result in a donation or gift of public funds "in aid of" the employees or their organization.

Section 219 of the city charter empowers the city council "to appropriate all moneys necessary for the expenses of the city and county and to transfer the unexpended balance of such appropriation not needed for the purpose for which it was made." The council is further empowered "to enact and provide for the enforcement of all ordinances necessary to protect life, health and property, to declare, prevent and summarily abate and remove nuisances; to preserve and enforce good government, general welfare, order and security of the city and county and the inhabitants thereof," and to fix the "compensation" of employees by ordinance.

■ ■ The title of ordinance No. 84 includes the word "compensation" as part of the broad purposes to be accomplished. Under the ordinance it is required that all persons subsequently employed become members of the plan as a condition of their employment, and the benefits arising therefrom unquestionably were part of the "compensations" to be received by the workers. Employees of the city whose service antedated the adoption of the retirement program had an elective right to participate therein, and the city entered into a written contract with each of the old employees who accepted membership in the plan. This contract incorporated the benefits as provided in section 15 of the ordinance, supra.

The trial court correctly stated the issue, which we quote from its findings as follows:

"If the retirement and disability plan provided for in this act is a gratuity or a donation to the beneficiary, it is clearly forbidden by the fundamental law. On the other hand, if it is a part of the compensation of such employee for services rendered to the city, or if it be for a public purpose, then clearly it is a valid exercise of the legislative power."

We hold that there was a definite public purpose to be served by the adoption of the ordinance creating the retirement program. The trial court aptly stated in its findings:

"Employees are a necessary part of carrying out the functions of a city. All modern legislation has looked toward old age security and protection for employees of the nation, states, cities and towns, as well as private industry."

This court has adopted a liberal attitude toward pension statutes and amendments thereto. *In re Interrogatories of the Governor,* 99 Colo. 591, 65 P. (2d) 7; *People ex rel. Albright v. Board of Trustees of the Firemen's Pension Fund,* 103 Colo. 1, 82 P. (2d) 765; *Bedford v. White,* 106 Colo. 439, 106 P. (2d) 469; *Board of Trustees of Firemen's Pension Fund v. People ex rel. Behrman,*

119 Colo. 301, 203 P. (2d) 490; *Davis v. Pensioners Protective Ass'n.*, 110 Colo. 380, 135 P. (2d) 142; *Kirschwing v. O'Donnell*, 120 Colo. 125, 207 P. (2d) 819; *McNichols, Auditor v. Walton*, 120 Colo. 269, 208 P. (2d) 1156; *McNichols, Auditor v. Police Protective Ass'n.*, 121 Colo. 45, 215 P. (2d) 303.

The authors of the plan contemplated its termination in the event of ultimate coverage under the National Social Security Act. The method of termination was fixed in advance, and the detail of distribution of remaining assets was settled at the time of creation, looking forward to such possible termination. The city council, under its broad powers to function as the legislative arm of the municipality, did not exceed its authority in adopting the ordinance in question.

It is contended that the "public purpose" prompting the creation of the program of retirement and benefits to retired workers, is dissipated upon the adoption of the termination ordinance, and that the payment of lump sum benefits, made up largely of contributions made by the City, cannot be treated in the same manner as monthly benefit payments upon retirement. We answer this contention with the statement that lump sum payments upon termination of the plan, and monthly pension payments following retirement so long as the plan continued in force, were provided by the same ordinance. In furtherance of the public purpose involved, the city council had discretion to terminate the plan as well as to create it.

The contention of those seeking reversal in this connection argue, in substance, that the money of the City deposited to the credit of the employees lost its identity as "public money" for the purpose of paying monthly pensions, but in some mystical manner retained the original character of "public money" in the event of termination of the plan. The ordinance served a public purpose when it was adopted, and its termination in full accord with the Act which created it does not destroy

the public purpose which it served during its existence. When the City contributed to the fund, the money thus supplied became a part of the trust fund and is subject to the direction of the city council in the process of terminating the plan. The city council has spoken and its mandate in this connection must be followed.

■ Second: *Is there any distinction between employees who voluntarily became members of the plan and those who were required to become members as a condition of their employment?*

This question is answered in the negative. The trial court held that, in so far as the right of members to participate in the distribution of the fund is concerned, no legal basis could be found for different treatment as between those who voluntarily became members and those who were required to become members as a condition of their employment. In this conclusion the trial court was correct. Since the result is the only matter of importance, and because there is a remote chance that a full discussion would be helpful in the future, we will not lengthen this opinion by incorporating therein the reasoning upon which the conclusion of this Court is based.

■ Third: *Are the several classes of members of the plan entitled to a refund of the contributions of $5.00 per month which they have paid into the trust fund?*

This question is answered in the affirmative. From what has been said hereinabove, it necessarily follows that the contributions of the beneficiary, as well as those of the City, shall be distributed pursuant to the provisions of the ordinance.

Fourth: *Do persons presently receiving retirement or disability payments, or persons who are eligible for retirement, but who continue working for the City and County of Denver, have any right to a continuation of monthly payments from the trust fund or any claim against that fund for future retirement payments?*

This question is answered in the negative. The ordi-

nance which created any rights to retirement benefits contained the conditions under which those rights could be ended, and participation in the distribution of assets upon termination of the plan effectively ends the right to other benefits.

Fifth: *Where an employee of the City terminated his employment and, (1) withdrew his contributions from the trust fund; (2) or elected to and did leave his money in the fund; or (3) filed no election but merely neglected to withdraw his contributions from the fund; does that person have any claim against the trust fund for a distributive share of the amount paid into the fund by the City and County of Denver?*

Section 15 provides that after members have been repaid their contributions, "the remainder in the trust fund, if any [shall be paid], to all members and beneficiaries in direct proportion to the respective total service record of each * * *." The trial court correctly concluded that, "the employee who severed his employment with the City and did not elect, in writing, to leave his accumulated contributions in the fund, receives his 'accumulated contributions' and nothing else." The employee who withdrew his contributions on termination of his employment shall receive nothing from distribution of the fund. It is our opinion that the trial court erroneously concluded that a member who left the employ of the City and elected, in writing, to allow the amount paid by him to remain in the fund should share in the remainder of the trust fund upon dissolution of the plan under Section 15, but only *"upon the basis of his service record created during the period when he shall have paid into the trust fund."* (Emphasis supplied).

Section 13 provides for the payment of *retirement* benefits to a member who has left the employ of the City prior to the time of attainment of retirement age. It does not deal with the question of distribution upon dissolution of the pension plan. Its provision limiting credit to the service record created during the period when the

member paid into the trust fund is not found in section 15, under which there was a disposition of the fund in the event of termination. We find no basis for reading that limitation into section 15. To be sure that section is not clear as to who are "members" and "beneficiaries," but this is not justification for lifting the limitation contained in section 13 and applying it to this class of members in determining the members' rights under section 15. We conclude that the members who elected, in writing, under section 13 to allow their contributions to remain in the fund are "members" within the purview of section 15 and will share in the fund "in direct proportion to their respective total service." The judgment of the trial court upon this issue is modified to the extent hereinabove indicated.

Sixth: *Does the Municipal Employees Credit Union have a valid legal claim against any distributive share of the trust fund which is to be paid to employees who borrowed money from the credit union and executed assignments of their interest in the fund as security for repayment of the loan?*

We must resolve this question in the light of the unusual circumstances under which it was decided by the trial court. The record in this case discloses that upon the trial, when this issue was taken up for consideration, the following occurred:

"THE COURT: * * * It appears to me, if any distribution is made it cannot be made as a pension but as compensation for services rendered. I believe under the law a person has a right to assign his wages if he cares to, and this will come within that purview, gentlemen.

"MR. KING: I certainly have no objection.

"MR. BANKS: We do not object to that ruling.

"MR. CAMPBELL: That ruling, your Honor, would be broad enough to cover all assignments, including not only assignments that have been made to the Municipal Credit Union, but assignments that have been made to the City and County of Denver.

"THE COURT: Assigned to anybody. Anybody can assign any right they intend to have, expect to have or claim to have.

"MR. WINNER: We have no objection.

"THE COURT: very well. That eliminates your question."

The foregoing testimony was given June 9, 1954, and at the conclusion of the trial an order was entered which included the following:

"AND THEREUPON, as to the defendant, Employee's Credit Union, the Court finds that as a matter of law that the members of said Union have the right to assign wages if they so choose.

"AND THEREUPON, the Court being now not sufficiently advised in the premises as to the defendants, Carl Helman, for himself and for all other members of the class of which he is representative, doth take said matter under advisement."

The final judgment and decree was entered August 4, 1954. It is apparent from the extended and comprehensive coverage of the decree that the court gave careful thought to all the questions presented by the record, while holding the case under advisement. Reconsideration of the validity of the assignments to the credit union caused the trial court, on its own motion, to reverse itself on that issue, and the final judgment and decree, dated August 4, 1954, contained, inter alia, the following:

"Does the Municipal Employees Credit Union have a valid and legal claim against any distributive share of the Trust Fund which is to be paid to employees who signed notes identical with Exhibit E?"

"Answer: No."

The findings and decree contain the reasoning upon which the trial court's reversal of opinion was based, but we express no opinion with regard thereto, for the reason that, under the circumstances of the case, it is unnecessary to do so. It is disclosed by the record that fol-

lowing the first determination of the issue as to the validity of the assignments, the credit union relied thereon and released thirty-seven debtors—who have left the city—from further liability on their notes and accepted their assignments in satisfaction thereof. The total amount of the indebtedness of these persons is $3,091.48. There was no objection made by any party to the original judgment sustaining the assignments. Under these circumstances the original order should remain undisturbed even though a subsequent and more careful analysis of the issue might lead to the conclusion that the order first entered was erroneous. The assignments made to the City, while not in exactly the same standing as those taken by the Credit Union, nevertheless were well within the scope of the judgment of the court entered June 9th. All parties having consented to the disposition then made of that issue, it should remain unchanged. The judgment of the trial court in this particular is reversed with direction to sustain the assignments of the Credit Union and those given to the City and County of Denver.

Seventh: *In computing the service records of employees entitled to distributive shares, shall only full years of service be counted?*

This question is answered in the affirmative. Counsel for the members of the Board of Trustees of the fund to be distributed include within their brief the following statement:

"The Trustees, however, submit that the Supreme Court note that the trial court ruled in connection with this matter that only full years of service could be counted in determining service record under Section 3, Ordinance 84, Series of 1946 (Exhibit 1, Folio 1307). In the event that distribution is to be made of the funds to the employees, the service record will be a basic figure to be used in the computations for the distribution, and in the circumstances the Trustees respectively request the

Court to affirm or modify specifically this finding of the trial court."

No party has claimed that the trial court erred in this connection. The question as to the unit of time to be used in measuring length of service is not otherwise raised or argued by counsel for any of the parties. On our own motion we are not disposed to take issue with the trial court's judgment on this point, and it accordingly is affirmed pursuant to the request that the subject be given specified treatment in the opinion of this court.

The judgment is affirmed in part and reversed in part, as hereinabove indicated.