No. 21905.

THE PEOPLES BANK, A CORPORATION *v.* THE BANKING BOARD OF THE STATE OF COLORADO; HARRY BLOOM, BANK COMMISSIONER, STATE OF COLORADO; ET AL.

(436 P.2d 681)

Decided January 22, 1968.      Rehearing denied February 19, 1968.

ZARLENGO, ZARLENGO, SEAVY & MULLIGAN, LESLIE A. GIFFORD, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, A. FRANK VICK, JR., Assistant, for defendants in error Banking Board of Colorado; Harry Bloom, State Bank Commissioner.

QUIAT, SEEMAN, QUIAT & WOODS, for defendants in error Guaranty Bank of Stapleton Airfield, Joe Alpert, Herman Horwich, John H. Roberts, I. J. Shore, Max Weisbly, and Walter A. Woods.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

THE Banking Board of the State of Colorado granted an application for a state bank charter to the Guaranty Bank of Stapleton Airfield, Denver, Colorado. The Peoples Bank, after protesting the application at the hearing before the banking board, brought an action in the district court seeking to have the board's order granting the application vacated and annulled. The district court affirmed the order of the banking board and dismissed the complaint.

The Peoples Bank contends that the district court erred when it entered its judgment affirming the order of the banking board because the banking board's order granting the charter to the Guaranty Bank of Stapleton Airfield was invalid for two reasons:

(1) The charter was granted upon approval of less than a majority of the entire banking board, and

(2) The granting of the charter is in violation of the statutory prohibition against branch banking.

I.

As provided in C.R.S. 1963, 14-2-2(1), the banking board consists of seven members, one of whom shall be the commissioner, who shall be the chairman.

It was stipulated and agreed by the parties in the trial court that six members of the banking board were present and participated in the hearing on the application; that at a subsequent meeting of the banking board at which the granting of the application was considered, five members of the board voted; and that three voted in favor of granting the charter and two voted against it.

Peoples Bank contends that at least four members of the banking board, a majority of the entire board, must approve the granting of a charter in order to be in compliance with C.R.S. 1963, 14-9-10 of our banking code which in part provides:

"Procedure for granting or denying charter. — (6) Within sixty days following the date of conclusion of the hearing, the banking board shall order the commissioner to grant a charter if a majority of the board finds that the requirements of section 14-9-10(1) have been met and that the applicant has met the burden of proof prescribed in section 14-9-10(3) .... If a majority of the banking board finds that the requirements of section 14-9-10(1) or the burden of proof of section 14-9-10(3) have not been met, the application for charter shall be denied ...."

Since the granting of the state charter to the Guaranty Bank of Stapleton Airfield was approved by a vote of three of the members, the Peoples Bank argue that the banking board's action in granting the charter was contrary to law and therefore invalid.

In support of this contention, two Illinois cases are cited: *Calvert v. Board of Education*, 41 Ill. App.2d 389, 190 N.E.2d 640 and *Chicago Rys. Co. v. Commerce Commission*, 336 Ill. 51, 167 N.E. 840. However, both cases required interpretation of statutes which are distinguishable from our statutes herein involved, and therefore, are not persuasive to our determination of this issue.

■ In making a determination of the legislative intent regarding the purport of the words "majority of the

568

board" as used in the quoted portion of C.R.S. 1963, 14-9-10 above, we must take into consideration other provisions of our banking code. It is a basic doctrine of statutory construction that every law is adopted as a whole, and a clause which standing alone gathers to it one meaning, or a meaning of doubtful import, may be defined as to its real meaning or may be made plain by a comparison with other portions of the same law. *Martinez v. People,* 111 Colo. 52, 137 P.2d 690.

In considering all of the provisions of the banking code, we have especially noted that there is one provision which, as we view it, sets and controls the procedure for approving all actions of the banking board. C.R.S. 1963, 14-2-2(5) in pertinent part provides:

". . . A majority of the board shall constitute a quorum, and action taken by a majority of those present at any meeting at which a quorum is present, shall be the action of the board. . . ."

In effect, this provision of our banking code states simply and clearly that an action by a majority of a quorum at any meeting of the banking board shall be the action of the board. There are no exceptions to its applicability and therefore it must be concluded that it governs all acts of the banking board, including the granting of a state bank charter.

Had the legislature intended that certain specified actions of the banking board, such as the granting or denying of a state bank charter would require more votes than a majority of the quorum, it would have in our view, provided specifically therefore by inserting in C.R.S. 1963, 14-2-2(5) additional wording which would reflect this legislative intention. By not doing so, the obvious conclusion is that the legislature intended that any and all actions of the banking board may be approved at a meeting at which at least a quorum is present; and that any such action taken by a majority of the quorum shall be the action of the board.

█ At the meeting which approved the granting of a state charter to the Guaranty Bank of Stapleton Airfield, five of the seven board members were present. This constituted a quorum and a majority of the quorum voted in favor of granting the charter. We hold therefore that the granting of the state bank charter as approved by the banking board was in accordance with the law and was valid.

## II.

Peoples Bank contends that the granting of the charter violates the statutory prohibition against branch banking for the following reasons: Guaranty Bank and Trust Company, Denver, Colorado, through one of its executive officers, "put together" the materials contained in the application; the stock ownership of both is the same and proportionately identical; the board of directors are the same; the chief executive officer is the same; the officers of the new bank come from Guaranty Bank and Trust Company; the working employees are to be furnished or trained by Guaranty Bank and Trust Company; and the accounting for the new bank is to be done by Guaranty Bank and Trust Company.

█ The prohibition against branch banking is set forth in C.R.S. 1963, 14-3-1(1):

"Every bank shall be conducted at a single place of business and no branch thereof shall be maintained elsewhere. A facility, agency, or paying or receiving station, operated by any bank, or agent at which deposits shall be received or paid out, drafts, travelers checks, or similar instruments issued, collections handled, or checks or drafts cashed, shall constitute a branch within the meaning of this section."

The statute clearly prohibits banks from conducting business at more than one location. It likewise infers that the duly granted charter of a bank cannot be used as a grant of authority to do business at more than the single place of business. Hence, it is also inferred that an approved bank having a duly granted charter cannot

apply for another charter to do business under a second charter at a second place of business.

■■ However, it does appear from an analysis of our banking code that the legislature did intend to permit what is known as "affiliate banks," whereby, for example, modern and progressive bookkeeping and accounting procedures may be employed by "smaller" banks through the contractual use of facilities of a "larger" bank, thus reducing overhead costs to both the smaller and the larger banks and thereby passing along larger profits to stockholders and less expensive charges to customers, without the abuses, risks and problems of supervision often involved in branch banking. (See C.R.S. 1963, 14-3-1(3) and 14-12-4 which recognize the existence of "affiliate banking" in Colorado and imposes criminal sanctions for acts committed outside the scope of recognized banking practices.) Because of the anticipated contractual relations between Guaranty Bank and Trust Company and Guaranty Bank of Stapleton Airfield, it could be said that they are "affiliate banks" or engaged in "affiliate banking."

■ The contentions of Peoples Bank, as previously stated, are some of the expected results of an attempt to establish a new bank in a different neighborhood by those having an established interest in an existing charter bank. The procedure for incorporating a new bank, the proposed operation of the new bank and the basis upon which the charter for the new bank was granted met with the approval of the banking board which was fully apprised of all the facts concerning the common ownership of stock, the common directors, and the other facts concerning the relationship between the two banks. In our view, none of the facts as shown from the record, necessarily and as a matter of law, reveal that the banking board's grant of the state charter to the applicant bank, is in violation of the prohibition against branch banking.

Peoples Bank contends that the facts as set forth warrant a piercing of the corporate veil to find in fact that Guaranty Bank and Trust Company is here engaging in branch banking. With this we likewise cannot agree. We quote approvingly from *First National Bank in Billings v. First Bank Stock Corp.*, 306 F.2d 937, which sets forth a multitude of facts, somewhat similar to the instant case, upon which it was also contended that one bank was, in fact, a branch of another and that the facts would warrant piercing of the corporate veil:

"[6] We find nothing in the agreed facts indicating that Valley is a 'branch' of Midland. What must appellants show, to establish that Valley is such a branch? They must show, that, in substance, Midland is doing business through the instrumentality of Valley, or vice versa, in the same way as if the institutions were one. (Cf. Camden Trust Co. v. Gidney, D.C. Cir., 1962, 301 F.2d 521)"

\* \* \* \* \* \*

"It is plain to us that all of these facts, taken together, affirmatively show that Valley is not a branch of Midland. The unitary type of operation characteristic of branch banking is not present."

▮▮▮▮ We view here nothing at variance with the statutory scheme which would invite piercing the corporate veil nor do we find facts present here which warrant exercise of such court power of penetration.

Judgment affirmed.

MR. JUSTICE SUTTON not participating.

MR. JUSTICE MCWILLIAMS dissenting.