Roy Romer State Treasurer State Capitol Denver, CO
Dear Mr. Romer:
I am writing in response to the request of your office for a formal legal opinion concerning certain issues raised by recent bids for the state bank accounts. Some of these issues were addressed in an informal opinion dated October 16, 1981 written by Richard H. Forman, first assistant attorney general. More recently, your office requested a formal opinion on these and other issues prior to entering a contract with one of the bidding banks.
QUESTIONS PRESENTED AND CONCLUSIONS
Your inquiry raises two specific questions:
1. If the state treasurer contracts with a bank to borrow money on a short term basis to cover negative balances in the state's bank accounts, do such borrowings create constitutionally prohibited debt?
 Such borrowings do not create debt in the constitutional sense if repaid in the same fiscal year under the circumstances described in more detail below.
2. Does the state treasurer have authority to contract with a bank to borrow money for limited purposes?
 At present the treasurer is not expressly authorized to borrow money for these limited purposes. It is my understanding that the Governor has included on his call for the current legislative session proposed legislation to authorize the treasurer to make such borrowings.
ANALYSIS
At present, the state compensates its bank for services by maintaining compensating balances in its accounts large enough to permit the bank to have earnings sufficient to cover the service charges. The compensating balances are monitored and regularly corrected to compensate for over or under earnings by the bank.
You now propose an arrangement whereby a zero balance would be kept in the accounts. The bank would agree to credit the state for deposits made to its accounts before those deposits are collected through the bank collection system ("uncollected deposits"). In addition, the bank would advance moneys to pay state warrants even though deposits had not yet been made to cover those warrants. These amounts are "warrant float." Consequently, the state accounts would have negative balances which would be covered by a short term loan from the bank, probably lasting one, two or three days until deposits are collected sufficient to repay the loan. The bank would be compensated by charging interest on this loan. Your specific question is whether the treasurer may lawfully enter into such an arrangement to borrow money and pay interest.
You have advised me that this arrangement has a number of advantages. The state can invest the borrowed money at a high rate and pay the banks a substantially lower government rate, thereby increasing earnings on investments of state moneys. Since the state will not have substantial amounts on deposit with the bank, there will be no requirement that the bank maintain large amounts of eligible collateral to secure state deposits, thereby reducing the state's cost for those accounts. Additional state moneys are thereby made available for investment.
I have examined this proposal to consider whether state law permits the treasurer to enter into this type of arrangement. I have not reviewed banking law to determine whether any prohibitions exist on the power of a bank to enter into this agreement. Nor have I considered any federal income tax implications for the bank and its customers.
There are two major legal problems involved which will be discussed below. First, there is a question whether the proposed loan is "debt" within the meaning of article XI, section 3 of the Colorado Constitution and thereby prohibited. Second, if it is not prohibited "debt" there is a question whether the treasurer's official powers extend to creating this arrangement.
a. Constitutional limitations on the state incurringdebt. Section 3 of article XI of the Colorado Constitution prohibits the power of the state to "contract any debt by loan in any form. . . ." This constitutional provision was construed by the Colorado Supreme Court in 1933 as follows:
 Since the purpose of section 3 of article XI is to prevent the pledging of revenues of future years, a statute which at the same time it creates a debt, creates the fund to pay it, and which fund would not be otherwise available for general purposes, is clearly outside the constitutional prohibition.
In Re Senate Resolution No. 2, 94 Colo. 101, 114-115,31 P.2d 325, 330 (1933). (Emphasis supplied.)
To constitute debt within the meaning of section 3 of article XI, one legislature must obligate a future legislature to appropriate funds to discharge the debt created by the first legislature.In Re Colorado State Senate, 193 Colo. 298, 305,566 P.2d 350, 355 (1977). See also Johnson v.McDonald, 97 Colo. 324, 49 P.2d 1017 (1935). The appropriate inquiry is whether implementation of the proposed borrowings will in fact create a general obligation debt of the state.See Gude v. City of Lakewood, ___ Colo. ___,636 P.2d 691 (1981).
It is my opinion that the banking arrangement which you propose does not involve a "debt" in this constitutional sense. It is a cash management arrangement which permits the state the maximum effective use of state moneys. So long as the state is required to repay the loan only in the current fiscal year, no future legislature becomes obligated to discharge the debt.
An additional question is presented by one of the bank bids. It is proposed that the state treasurer borrow $45 million immediately upon initiation of the contract. This amount would be substantially larger than the amount of uncollected deposits and warrant float on most days of the fiscal year. The $45 million figure does represent an amount actually required to offset uncollected deposits and warrant float during certain periods of the fiscal year. This figure is an estimate of the state's projected cash management needs.
Under this proposal, for much of the fiscal year the state would have borrowings which exceed the amounts outstanding attributable to uncollected deposits and warrant float. The bank would expect to also look for repayment to the proceeds of the sale of any investments purchased with borrowed moneys.
It is my opinion that this borrowing arrangement would not create constitutional "debt" if it is limited to repayment in the same fiscal year. Even if the bank loans more money than is immediately needed to offset negative account balances, no unconstitutional "debt" is created under these circumstances.
The proposed loan arrangement must be carefully structured and the state permitted to terminate it at any time. The agreement between the state and the bank must make clear that loans are to be repaid in the same fiscal year that the loan is made. The state cannot be liable for amounts not repaid in the current fiscal year. This opinion presumes the bank contract will be submitted for final approval by this office and is conditioned upon such approval.
2. Statutory authority of the treasurer. The second problem concerns whether the state treasurer has been authorized as part of his official duties to enter into this type of banking arrangement. As a general rule, the Colorado courts have taken a narrow view of the powers of an official position, stating that a public officer has only such power and authority as are clearly confirmed by law. A public official, even a constitutional officer, cannot merely assume broad powers unless properly conferred. Skidmore v. O'Rourke, 152 Colo. 470,383 P.2d 473 (1963). As has been said of the office of county sheriff:
 The mere creation of an official position does not automatically vest that official with unlimited powers. The scope of his power and authority is limited to that inherent in the office. All other powers must be derived from the legislature.
Douglas v. Kelton, 199 Colo. 446, 610 P.2d 1067 (1980).
The position of state treasurer is created by section 1 of article IV of the Colorado Constitution. The state constitution further states in section 12 of article X that the general assembly may provide by law for the "safekeeping and management of the public funds in the custody of the state treasurer. . . ." The question therefore becomes whether the general assembly has granted authority to the treasurer to manage state funds in the proposed manner.
The treasurer is expressly authorized by statute to deposit public moneys in bank accounts. C.R.S. 1973, 24-36-104(1). The statutory function of the Treasury Department is to receive all state moneys and to "deposit and disburse the same in the manner prescribed by law." C.R.S. 1973, 24-36-102(1).
The problem in my view is that a decision by the state treasurer to borrow and pay interest on the borrowed money, although intended to be a cash management tool, is a power which is not clearly implicit in the treasurer's authority to open bank accounts for state deposits. This problem is compounded by the fact that the treasurer is expressly authorized to pay interest in certain circumstances not applicable to the proposed bank arrangement. He is authorized to pay interest at a six percent rate per annum when a state warrant is presented for payment but the treasury is without funds for a period of time to pay the warrant. C.R.S. 1973, 24-36-107 and 24-36-108.
It is therefore my opinion that the treasurer is without statutory authority to enter into the proposed loan arrangement until additional enabling legislation has been passed.
SUMMARY
In conclusion, it is my opinion that if additional legislation is passed authorizing the state treasurer to borrow money and pay interest under the circumstances described above, such borrowing may be made without violating the constitutional debt prohibition. If you have additional questions on this matter, please do not hesitate to contact me.
Very truly yours,
 J.D. MacFARLANE Attorney General
TREASURER, STATE PUBLIC FUNDS STATE DEBTS
C.R.S. 1973, 24-36-104
C.R.S. 1973, 24-36-102(1) C.R.S. 1973, 24-36-107
C.R.S. 1973, 24-36-108
Colo. Const. art. XI, § 3
TREASURY, DEPT. OF All Other Areas
Constitutionally prohibited debt does not include borrowings by the state treasurer to be repaid in the current fiscal year, however the treasurer must obtain statutory authority to borrow money and pay interest.